David H. Dicker, Esq. (SBN 180182)
dhd@dickerlaw.com
Hagar Cohen, Esq. (SBN 272195)
hcohen@dickerlaw.com
**DICKER & DICKER, LLP**
4580 E. Thousand Oaks Blvd., Suite 350
Westlake Village, California 91362
Tel: (805) 373-1000
Fax: (805) 373-1005

Attorneys for Defendants, GVD GUFFEY RIM FOREST,
RANGI GVD-GUFFEY, and GVD-GUFFEY PARTNERS II

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONY INSURANCE COMPANY, a Corporation<br><br>                    Plaintiff,<br><br>           vs.<br><br>ETHAN LONGLEY DBA FIFTY ONE-FIFTY CONSTRUCTION; GVD-GUFFEY RIM FOREST; RANGI GVD-GUFFEY; GVD-GUFFEY PARTNERS II; NAVIGATORS SPECIALTY INSURANCE COMPANY; and DOES 1 through 10,<br><br>                    Defendants. | Case No: 5:20-cv-00161-RGK-KK<br><br>**COUNTERCLAIM FOR:**<br><br>1. **DECLARATORY RELIEF – DUTY TO DEFEND**<br>2. **DECLARATORY RELIEF – DUTY TO INDEMNIFY**<br>3. **BREACH OF CONTRACT**<br>4. **BREACH OF THE IMPLIED COVENANT OF GOOD-FAITH AND FAIR DEALING**<br>5. **INDEMNIFICATION**<br>6. **INDEMNIFICATION**<br><br>**DEMAND FOR JURY TRIAL PER F.R.C.P RULE 38**<br><br> Action Filed: January 23, 2020 |
| GVD-GUFFEY RIM FOREST; RANGI GVD-GUFFEY; GVD-GUFFEY PARTNERS II, | |

COUNTERCLAIM

Counter-claimants,

v.

COLONY INSURANCE COMPANY, a Virginia corporation; ETHAN LONGLEY, an individual d/b/a FIFTY ONE-FIFTY CONSTRUCTION; BROWN & BROWN INSURANCE BROKERS OF SACRAMENTO, INC., a California corporation; NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York corporation; and ROES 1 through 50, inclusive,

Counter-defendants.

Defendants and Counterclaimants GVD-GUFFEY RIM FOREST, RANGI GVD-GUFFEY, and GVD-GUFFEY PARTNERS II (collectively, "counterclaimants") hereby assert their counterclaim against COLONY INSURANCE COMPANY, ETHAN LONGLEY, an individual d/b/a FIFTY ONE-FIFTY CONSTRUCTION, BROWN & BROWN INSURANCE BROKERS OF SACRAMENTO, INC. ("B&B"), NAVIGATORS SPECIALTY INSURANCE COMPANY, and ROES 1 through 50, inclusive, and in furtherance thereof allege as follows:

## **THE PARTIES**

1.     Counterclaimant GVD-GUFFEY RIM FOREST ("RIM FOREST") is, and at all relevant times herein was, a California general partnership.

2.    Counterclaimant RANGI-GVD GUFFEY ("RANGI") is, and at all relevant times herein was, a California general partnership.

3.    Counterclaimant GVD-GUFFEY PARTNERS II ("PARTNERS II") is, and at all times mentioned herein was, a California general partnership. PARTNERS II is the general partner of counterclaimant RANGI.

4.    GVD is informed and believes, and thereupon alleges, that Counter-defendant COLONY INSURANCE COMPANY ("COLONY") is, and at all relevant times herein was, a Virginia corporation providing insurance coverage and conducting business in the State of California.

5.    GVD is informed and believes, and thereupon alleges, that Counter-defendant ETHAN LONGLEY is, and at all relevant times herein was, an individual doing business as Fifty One-Fifty Construction ("LONGLEY"), which provides general contractor services in California under Contractors State License Number 737967.

6.    GVD is informed and believes, and thereupon alleges, that Counter-defendant BROWN & BROWN INSURANCE BROKERS OF SACRAMENTO, INC. ("B&B") is, and at all relevant times herein was, a California corporation providing insurance brokering services in the State of California.

7.    GVD is informed and believes, and thereupon alleges, that Counter-defendant NAVIGATORS SPECIALTY INSURANCE COMPANY ("NAVIGATORS") is, and at all relevant times herein was, a New York corporation providing insurance coverage and conducting business in the State of California.

8.    The true names and capacities, whether individual, corporate, or otherwise, of the counter-defendants named herein as Roes 1 through 50, inclusive, are unknown to GVD, who therefore sues said counter-defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure. GVD will seek leave of Court to amend this Counter-complaint when the true names and

capacities of such counter-defendants have been ascertained. Reference herein to "Counter-defendants" without other limitation shall include both specifically and fictitiously named counter-defendants.

9.      GVD is informed and believes, and based thereon alleges, that at all times mentioned herein Counter-defendants, and each of them, were the agents, employees, officers, directors, members, affiliates, or alter egos of each other and, in doing the things herein alleged, were acting within the course and scope of said agency and with the knowledge and approval of each of the remaining Counter-defendants.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject-matter of this action under the doctrine of supplemental jurisdiction because these claims arise out of the same subject-matter as those under the Complaint filed in this matter by Colony Insurance Company.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district.

## RELEVANT FACTS

12.     Counterclaimant RIM FOREST is the owner of the real property commonly known as 26599 Pine Avenue, in Rim Forest, California upon which a service station is situated (the "Property").

13.     In January of 2010, RIM FOREST entered into a lease agreement with RANGI wherein it leased the Property to RANGI.

14.     Counterdefendant LONGLEY provides certain maintenance services to the service station situated on the Property pursuant to an oral amendment to a written services contract (the "Services Contract"). As part of the Services Contract,

LONGLEY was required to procure certain insurance policies and add Counterclaimant RANGI as an additional insured to said policies.

15.     Upon information and belief, LONGLEY engaged the brokerage services of counterdefendant B&B in procuring the policies called for under the Services Contract. Counterclaimants further allege, on information and belief, that LONGLEY provided B&B with a copy of the Services Contract and/ or otherwise advised that the work he performed on the Property for which coverage was sought was the maintenance of a motor vehicle service station. Upon information and belief, B&B knew that the coverage sought by LONGLEY was for damages or injuries arising from LONGLEY's acts or omissions, inclusive of damage or injury to motor vehicles and/ or drivers, other than LONGLEY, of motor vehicles.

16.     Upon information and belief, B&B procured a commercial general liability ("CGL") policy for LONGLEY, which was intended to provide the coverages and limits identified in the Services Contract. The CGL policy was issued by COLONY, as policy numbered ACA24434, as amended per Additional Insured Endorsement Form U156-0310 to include RANGI as named additional insured, and specifically covering "Liability arising out of operations performed by [LONGLEY]" on the Property (the "Policy").

17.     On August 25, 2016, Pearl Elizarraras, while driving her motorcycle, visited the service station on the Property. Elizarraras alleges that the gas tank cover located on the Property, which was serviced by LONGLEY the day prior and generally maintained by him, flipped over when she drove over it, causing her motorcycle to flip up and causing her to be thrown over the handlebars onto her head (the "Incident").

18.     Sometime in the Spring of 2017, RANGI and PARTNERS II made a prelitigation tender to COLONY under the Policy for the damages claimed by Elizarraras. COLONY denied the tender on the basis that neither RANGI nor

PARTNERS II were "insureds" under the Policy, and on the additional basis that there is no coverage under the Policy given the Absolute Auto Exclusion.

19.    On or about July 26, 2018, Elizarraras filed a civil action in the San Bernardino Superior Court, Case Numbered CIVDS1819395, to recover damages purportedly arising from the Incident (the "Elizarraras Action"). Within the Elizarraras Action, Elizarraras claims that LONGLEY failed to properly re-install the gas tank cover after servicing it, which in turn caused the injuries she claims to have been sustained. The Elizarraras Action is set for trial on July 6, 2021.

20.    In or around October of 2018, RANGI and PARTNERS II made a post-litigation tender to COLONY under the Policy for the damages claimed in the Elizarraras Action. COLONY again denied the tender based on the grounds alleged in Paragraph 18 hereinabove.

21.    Upon information and belief, counterclaimants allege that LONGLEY also tendered his defense and sought indemnification from COLONY for the claims made in the Elizarraras Action. COLONY, at least initially, denied coverage under the Policy based upon the Absolute Auto Exclusion contained therein.

22.    In or around late 2019, RANGI and PARTNERS II disputed COLONY'S coverage determination and claimed that, as additional insureds, they were entitled to benefits under the Policy, including indemnity and the tender of their defense in the Elizarraras Action.

23.    Upon information and belief, sometime in early January of 2020, COLONY agreed to participate in the defense of RANGI and LONGLEY in the Elizarraras Action under a reservation of rights. COLONY, however, refused the tender of PARTNERS II.

24.    Shortly after agreeing to participate in the defense of RANGI and LONGLEY in the Elizarraras Action, COLONY filed the action underlying this counterclaim seeking, *inter alia*, declaratory relief that (1) RANGI and PARTNERS

COUNTERCLAIM

II are not "insureds" within the meaning of the Policy, and (2) even if they were "insureds," that there is no Policy coverage for the claims made in the Elizarraras Action (the "Coverage Action"). COLONY also seeks reimbursement from RANGI for any payments it made toward RANGI's defense in the Elizarraras Actions, which is $0 as of the date hereof.

25.     Notably, counterdefendant NAVIGATORS provides a separate CGL policy under which Counterclaimants have coverage. The tender of defense and subsequent dispute of COLONY's coverage determination was made by NAVIGATORS on behalf of Counterclaimants. Absent COLONY's participation in the defense of the Elizarraras Action, NAVIGATORS would bear the cost of defense on behalf of Counterclaimants.

## FIRST CLAIM FOR RELIEF

## DECLARATORY RELIEF – DUTY TO DEFEND AND INDEMNIFY

## (By RANGI and PARTNERS II as Against COLONY and Roes 1 through 10)

26.     Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 25, inclusive, and reallege them as if they were fully set forth at length herein.

27.     An actual controversy presently exists as among RANGI and PARTNERS II (collectively, the "Insured Counterclaimants"), on the one hand, and COLONY and ROES 1 through 10, on the other hand, with respect to whether COLONY owes a duty to defend and indemnify the Insured Counterclaimants under the Policy for the claims alleged in the Elizarraras Action.

28.     Specifically, RANGI claims that, as a named additional insured, it is considered "an insured" under the Policy. COLONY, however, contends that an additional insured such as RANGI is not an "insured" within the definition of the

COUNTERCLAIM

Policy. Likewise, PARTNERS II alleges that, as the general partner of RANGI, it is encompassed within the definition of "insured" under the Policy. COLONY, on the other hand, disputes that a general partner of an additional insured is within the meaning of "insured" under the Policy.

29.     An actual controversy also presently exists as among these Parties with respect to coverage under the Policy. Specifically, the Insured Counterclaimants contend that the Policy provides coverage for the damages claimed in the Elizarraras Action since the "occurrence" is not one that is subject to the Absolute Auto Exclusion. COLONY, on the other hand, contends that the Incident and resultant damages are excluded from coverage under the Absolute Auto Exclusion. The Policy, including the Absolute Auto Exclusion, is attached to the Coverage Action as Exhibit "A."

30.     The Insured Counterclaimants thus seek a judicial declaration that (1) they are "insureds" within the meaning of the Policy, (2) that the Policy provides coverage for the claims alleged in the Elizarraras Action, and (3) given the foregoing, that COLONY has an obligation to defend and indemnify the Insured Counterclaimants for the losses arising from the Incident and as alleged in the Elizarrraras Action.

31.     The Insured Counterclaimants have no other existing, speedy, accurate or proper remedy at law by which the rights and duties of the parties may be adequately determined.

32.     A judicial declaration is necessary and appropriate at this time and under the circumstances alleged hereinabove so that the parties to this cause of action can ascertain their respective rights and obligations, and move forward accordingly.

///

///

8

COUNTERCLAIM

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT

### (By RANGI and PARTNERS II as Against COLONY and ROES 1 through 10)

33.     Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 32, inclusive, and reallege them as if they were fully set forth at length herein.

34.     In the Spring of 2017, the Insured Counterclaimants issued a pre-litigation tender of defense to COLONY in connection with the loss arising out of the Incident. On or about June 1, 2017, COLONY denied coverage and refused the tender of defense.

35.     On September 12, 2018, after the Elizarraras Action was filed, counterclaimants again made a claim and tendered their defense to COLONY under the Policy. On November 5, 2018, COLONY issued a final determination denying coverage and refusing counterclaimants' tender of defense.

36.     After numerous subsequent attempts to obtain the benefits to which the Insured Counterclaimants are entitled to under the Policy, in early 2020, COLONY finally accepted RANGI'S tender of defense in the Elizarraras Action, subject to a reservation of rights. COLONY maintained its denial of coverage with respect to PARTNERS II on the basis that it didn't qualify as an "insured" under the Policy.

37.     Counterclaimants allege, on information and belief, that the policy defines the term "insured" to include, *inter alia*, an insured's partners.

38.     PARTNERS II is the general partner of RANGI - the named additional insured. Thus, under the policy, COLONY is obligated to defend and indemnify PARTNERS II in connection with the Elizarraras Action.

39.     COLONY breached the policy when it refused and failed, and continues to refuse, to indemnify and defend PARTNERS II in the Elizarraras Action.

///

9

COUNTERCLAIM

40.    Counterclaimants further allege, on information and belief, that the Policy defines "insured" to include named additional insureds, such as RANGI.

41.    By way of the underlying Coverage Action here, COLONY seeks a determination that RANGI is not an insured under the Policy. RANGI seeks a determination to the contrary within the first claim for relief in this counterclaim. Should the Court find that RANGI is an "insured" within the meaning of the Policy, then COLONY'S refusal to accept RANGI'S pre-litigation tender of defense in the Spring of 2017 and subsequent post-litigation tender of defense in late 2018 constitute a material breach of the policy.

42.    The Insured Counterclaimants have duly performed each and every covenant and/ or condition necessary and/ or required to be performed under the Policy, or have been lawfully excused from any such performance.

43.    As a direct and proximate result of COLONY'S breach of the Policy by way of its denial of coverage and refusal to timely accept the tender of defense, the Insured Counterclaimants have been harmed in that they have and are incurring attorneys' fees, costs, and other expenses to defend the Elizarraras Action.

44.    As a further direct and proximate result of COLONY'S aforementioned breach, the Insured Counterclaimants have been damaged in that they may be held responsible for the damages alleged in the Elizarraras Action, which, upon information and belief, are covered under the Policy.

45.    In breach of the Policy, COLONY has failed to pay and continues to fail to pay and/ or reimburse the Insured Counterclaimants for all attorneys' fees, costs and other expenses to defend the Elizarraras Action, and has failed and continues to fail to accept its obligation to indemnify the Insured Counterclaimants in the Elizarraras Action.

///

///

COUNTERCLAIM

46.    As a further direct and proximate result of COLONY'S breach of its contractual obligations under the Policy, the Insured Counterclaimants have and will continue to incur damages in a sum according to proof at trial.

47.    As a further direct and proximate result of COLONY'S breach of its contractual obligations, the Insured Counterclaimants have incurred and will incur attorneys' fees and costs, and other expenses, with respect to the Coverage Action to adjudicate their rights under the policy.

48.    The Insured Counterclaimants are entitled to recover all of their damages as set forth above, with interest thereon, in an amount to be determined according to proof.

## THIRD CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (By RANGI and PARTNERS II as Against COLONY and ROES 1 through 10)

49.    Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 48, inclusive, and reallege them as if they were fully set forth at length herein.

50.    At all relevant times hereto, COLONY had a duty to act fairly and in good faith toward the Insured Counterclaimants pursuant to the terms of the Policy and by operation of law.

51.    Among other duties, the implied covenant of good faith and fair dealing obligates COLONY to place the Insured Counterclaimants' interests at even field or above the interests of COLONY, and not to engage in any acts or omissions that would prejudice or interfere with the Insured Counterclaimants' rights to receive the benefits provided under the Policy.

///

///

COUNTERCLAIM

52.    Implied within the Policy is COLONY'S obligation to act fairly and in good faith toward the Insured Counterclaimants by promptly investigating the claims and refraining from unfairly, unreasonably and without proper cause delaying, withholding or denying the benefits to which the Insured Counterclaimants are entitled to under the Policy.

53.    COLONY breached its duty to deal fairly and in good-faith with RANGI when it failed to timely accept the tender of defense for the loss arising out of the Incident. Specifically, it took COLONY nearly three (3) years from the date the claim was initially tendered to finally acknowledged that, as an additional insured, RANGI was entitled to Policy benefits. COLONY acted without cause and in bad-faith when it refused to recognize RANGI, a named additional insured, as an "insured" under the Policy and predicated its refusal to accept the tender of defense based on these unjustified grounds.

54.    COLONY also breached the covenant of good-faith and fair dealing in refusing PARTNERS II's tender of defense in connection with the Incident. Specifically, and as stated above, COLONY ultimately acknowledged that RANGI was an insured under the policy. Upon information and belief, a partner of a named insured is considered an "insured" under the Policy. PARTNERS II is RANGI'S general partner. It was named as a defendant in the Elizarraras Action solely because it is RANGI's general partner. Thus, there is no reasonable grounds upon which COLONY can deny coverage for PARTNERS II, while simultaneously accepting RANGI's tender, regardless of the existence of any reservation of rights. The denial is a breach of the covenant of good faith and fair dealing.

55.    COLONY further breached the covenant of good faith and fair dealing when it deliberately misinterpreted, misconstrued, and misapplied the Absolute Auto Exclusion in a manner inconsistent with that which was intended. Specifically, the Insured Counterclaimants allege, on information and belief, that COLONY knew

that the CGL coverage provided to LONGLEY was for LONGLEY's operation on a service station which is only frequented by motor vehicles. Upon information and belief, COLONY represented that the Policy provided the coverage in the manner and form set forth in the Services Contract. The Absolute Auto Exclusion is a provision designed to exclude any claims made as a result of an insured's use or operation of a motor vehicle – such that the CGL policy is not misconstrued to provide automobile insurance coverage. Despite knowing all of the above and making the representations regarding coverage at the outset of procurement of the Policy, COLONY now contends that the Policy excludes the only plausible claim (or types of claims) that the Policy is intended to cover.

56.     In doing the things alleged in Paragraph 55, above, COLONY employed deceptive and abusive underwriting, claim and litigation practices to avoid its lawful obligations and to prevent the Insured Counterclaimants receipt of the benefits afforded them under the Policy. The above-mentioned acts and omissions also constitute dilatory claims handling and utilization of improper standards to evaluate claims.

57.     COLONY's conduct as alleged above is part of a pattern of unfair claims practices, in violation of various laws, including, without limitations, California Insurance Code § 790.03 et seq., and the Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, § 2695.1 et seq.

58.     As a direct and proximate result of COLONY's breach of the implied covenant of good-faith and fair dealing, the Insured Counterclaimants have been damaged in a sum according to proof at trial, which sums include attorneys' fees, costs and expenses incurred in connection with the Elizarraras Action, the Coverage Action, and this counterclaim to enforce the Insured Counterclaimants' rights. The precise amount of damages has not yet been determined but is within the jurisdiction of this court, and as will be proven at trial.

## FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

### (Counterclaimants as Against LONGLEY and ROES 11 through 20)

59.    Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 58, inclusive, and reallege them as if they were fully set forth at length herein.

60.    The Services Contract is a written contract entered into on December 1, 2007, as between PARTNERS II and LONGLEY and ROES 11 through 20 (the "Contractor Counterdefendants").

61.    Prior to its oral amendment, the Services Contract provided that the Contractor Counterdefendants would provide general service and maintenance to various service stations owner and/ or operated by PARTNERS II.

62.    After entering into the Service Contract, the Parties later orally amended the Services Contract to extend its term and to include general service and maintenance to the service station located on the Property. In fact, for at least the last five years, the service station on the Property has been serviced and maintained by the Contractor Counterdefendants in the manner set forth in the Services Contract. Sometime in 2010, the Services Contract, as orally amended, was orally assigned to RANGI.

63.    Under the Services Contract, as amended, the Contractor Counterdefendants were required to procure and maintain "Commercial General Liability Insurance against bodily injuries and death and property damage with a combined single limit of not less than $1,000,000 per person and $1,000,000 per occurrence, including contractual liability insurance specifically insuring the indemnifying portion of this [Services Contract], naming Owner and managing agent as additional names insured[.]"

///

64.    The "indemnifying portion" of the Services Contract provides, in pertinent part, that LONGLEY shall save and hold harmless the 'owner' of the Property for any losses, damages, and/ or injuries that occur as a direct or indirect result of any action or omission on LONGLEY's part, including "for injuries sustained by any person or persons other than employees of [LONGLEY] while at the Property, or elsewhere, however such injuries may be caused." The indemnification provision also required that the policies of insurance required of LONGLEY shall contain clauses insuring the "Owner Parties" against any claims arising or alleged to have arisen as a result of any act or omission of LONGLEY.

65.    The insurance and indemnification provisions contained within the Services Contract were to be applicable to RIM FOREST, as owner of the Property, RANGI, as the assignee of the Services Contract, as well as all of its "officers, directors, shareholders, **partners**, agents, employees, and contractors" – thus including PARTNERS II as the general partner of RANGI.

66.    The Incident qualifies as a loss, damage or injury under the indemnification provision of the Services Contract for which the Contractor Counterdefendants were required to procure insurance.

67.    Within the Coverage Action, Plaintiff COLONY contends that there is no coverage for the Incident as alleged in the Elizarraras Action. If the foregoing is determined to be true, then the Contractor Counterdefendants breached the Services Contract by failing to procure policy and coverage in the manner called for thereunder.

68.    Furthermore, within the Coverage Action, COLONY contends that PARTNERS II and RIM FOREST are not "insureds" under the Policy. Since the Services Contract required the Contractor Counterdefendants to obtain insurance coverage including contractual liability insurance in conformance with the

COUNTERCLAIM

indemnification obligations, the failure of the Contractor Counterdefendants to obtain coverage insuring Counterclaimants is a breach of the Services Contract.

69.    As a direct and proximate result of the Contractor Counterdefendants' breach of the Services Contract as alleged hereinabove, counterclaimants have been damaged in a sum according to proof at trial, but which sum exceeds the jurisdictional minimum of this Court.

70.    Counterclaimants are entitled to recover their reasonable attorneys' fees and costs pursuant to the terms of the Services Contract.

71.    Counterclaimants are also entitled to pre-judgment interest at the legal rate pursuant to law, including, but not limited to, Civil Code § 3287.

## FIFTH CLAIM FOR RELIEF
## EXPRESS INDEMNIFICATION
### (Counterclaimants as Against LONGLEY and ROES 11 through 20)

72.    Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 71, inclusive, and reallege them as if they were fully set forth at length herein.

73.    Under the Services Contract, and specifically the indemnification provision, as quoted in Paragraph 64 hereinabove, LONGLEY is contractually required to indemnify, save, and hold harmless the owner of the Property, RIM FOREST, and its officers, directors, shareholders, partners, agents, employees and contractors, which includes RIM FOREST and PARTNERS II.

74.    In the Coverage Action, COLONY seeks reimbursement from RANGI for defense costs incurred by it in the Elizarraras Action in connection with its participation of RANGI's defense in that action.

///

///

COUNTERCLAIM

75.     To the extent COLONY prevails in the Coverage Action, and a judgment is issued against RANGI for reimbursement, then under the Services Contract the CONTRACTOR Defendant are required to indemnify RANGI for any such amounts.

76.     COLONY has also named RIM FOREST and PARTNERS II in the Coverage Action in connection with its declaratory relief claims. The declaratory relief claims in the Coverage Action arise solely as a result of claims made in connection with the Elizarraras Action. Accordingly, RIM FOREST and PARTNERS II will be required to expend defense costs in the Coverage Action, for which the Contractor Defendants must indemnify them for.

77.     The damages that Counterclaimants have incurred and will continue to incur in connection with the Coverage Action qualify as "losses, expenses (including attorney's fees and costs), damages, costs, liabilities for damages caused or occasioned directly or **indirectly** by [LONGLEY]…(ii) because of injuries sustained by any person [ ] while at the [P]roperty[.]"

78.     Thus, Counterclaimants are entitled to indemnity by the Contractor Defendants pursuant to the terms of the Services Contract.

79.     Counterclaimants are also entitled to recover their attorneys' fees and costs incurred in this counterclaim pursuant to the attorneys' fees provision contained in the Services Contract.

80.     Counterclaimants are entitled to pre-judgment interest pursuant to statute.

///

///

///

///

///

17

COUNTERCLAIM

## SIXTH CLAIM FOR RELIEF

### NEGLIGENCE

### (RANGI as Against B&B and ROES 21 through 30)

81.    Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 80, inclusive, and reallege them as if they were fully set forth at length herein.

82.    Counterclaimants allege, on information and belief, that LONGLEY engaged the brokerage services of B&B in procuring insurance policies in the form and limits called for under the Services Contract.

83.    Counterclaimants further allege, on information and belief, that LONGLEY provided B&B with the Services Contract and/ or that he orally advised B&B of the insurance requirements set forth in the Services Contract. Specifically, B&B knew that the work LONGLEY was performing was on a service station, that the Services Contract required that all losses be covered (especially foreseeable losses vis a vis automobile related losses), and that counterclaimants were to be insured under the policies.

84.    B&B procured for LONGLEY the CGL Policy issued by COLONY. Upon information and belief, in procuring the Policy, B&B either intentionally or negligently represented that the Policy provided coverage as required under the Services Contract.

85.    Moreover, and on information and belief, B&B had provided LONGLEY with insurance brokerage services for at least ten years in connection with his work on service stations and had a sufficiently long-term relationship with LONGLEY and his work for Counterclaimants to know, and B&B did know, LONGLEY's business and his concerns regarding adequate coverage. B&B thus had

a duty of care to procure a policy with coverage for those risks or at least to explain that the insurance obtained excluded those risks.

86. B&B also prepared, upon information and belief, the Certificate of Insurance, that showed that RANGI was an additional insured under the Policy. The Certificate of Insurance is attached as Exhibit "B" in the Coverage Action.

87. Given that B&B, upon information and belief, received and reviewed the Services Contract in connection with procuring the Policy, and thus knew that the Policy was to cover RANGI as additional insured. RANGI is thus a third-party beneficiary to which B&B owed a duty of care. *See Travelers Prop. & Cas. Co. of Amer. V. Sup. Ct.*, 215 Cal.App.4th 561, 578-579; *See also Jackson v. Aetna Life & Cas. Co.*, 93 Cal.App.3d 838, 846-847.

88. In the Coverage Action, COLONY claims that (1) RANGI is not an "insured" within the Policy, and (2) that the Policy does not provide coverage for the loss alleged in the Elizarraras Action.

89. If COLONY prevails in the Coverage Action, then B&B breached its duty of care to RANGI in that it failed to procure insurance coverage in the manner and form called for under the Services Contract.

90. RANGI has been harmed as a direct and proximate result of B&B's breach in that it has incurred and will continue to incur attorneys' fees, costs and other expenses in connection with the Coverage Action.

91. RANGI has also been harmed as a direct and proximate result of B&B's breach in that, if COLONY prevails in the Coverage Action, it may be held responsible for the losses alleged in the Elizarraras Action, for which coverage should have been procured by B&B.

///

///

///

COUNTERCLAIM

## SEVENTH CLAIM FOR RELIEF

### INDEMNITY

### (RANGI as Against NAVIGATORS and ROES 31 through 50)

92.    Counterclaimants incorporate by reference each and every allegation set forth in paragraphs 1 through 91, inclusive, and reallege them as if they were fully set forth at length herein.

93.    NAVIGATORS is RANGI's insurance carrier, and has accepted the tender of defense in connection with the Elizarraras Action. NAVIGATORS, on behalf of counterclaimants, also tendered the Elizarraras claim to COLONY, and directly handled the coverage issues with COLONY.

94.    In the Coverage Action, COLONY seeks reimbursement from RANGI for the costs of defense paid by COLONY in connection with its participation of RANGI's defense in the Elizarraras Action. However, given that NAVIGATORS has accepted RANGI's tender, which covers defense costs in the Elizarraras Action, to the extent COLONY prevails on its reimbursement claim in the Coverage Action, NAVIGATORS should be responsible for any such reimbursement.

95.    NAVIGATORS' policy expressly provides that it will pay the costs of defense incurred in the Elizarraras Action. The fact that reimbursement from a carrier is sought for said costs does not alter NAVIGATORS' responsibility to shoulder those costs.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray for judgment as follows:

ON THE FIRST CLAIM FOR RELIEF

1. A judicial declaration that RANGI and PARTNERS II are "Insureds" within the meaning of the Policy;

2. A judicial declaration that the Policy provides coverage for the losses alleged in the Elizarraras Action;

COUNTERCLAIM

3. A judicial declaration that COLONY has a duty to defend and indemnify RANGI and PARTNERS II in connection with the Elizarraras Action;

4. For any further or other relief that the Court deems just and proper.

ON THE SECOND AND THIRD CLAIMS FOR RELIEF

1. For judgment in favor of the Insured Counterclaimants and against Colony;

2. For all actual and compensatory damages according to proof at trial;

3. For attorneys' fees and costs;

4. For such other and further relief as the Court deems just and proper.

ON THE FOURTH AND FIFTH CLAIMS FOR RELIEF

1. For judgment in favor of the Counterclaimants and against Longley;

2. For all actual and compensatory damages according to proof at trial;

3. For attorneys' fees and costs;

4. For such other and further relief as the Court deems just and proper.

ON THE FIFTH CLAIM FOR RELIEF

1. For judgment in favor of the Insured Counterclaimants and against B&B;

2. For all actual and compensatory damages according to proof at trial;

3. For attorneys' fees and costs;

4. For such other and further relief as the Court deems just and proper.

ON THE SIXTH CLAIM FOR RELIEF

1. For judgment in favor of the Insured Counterclaimants and against Navigators;

2. For all actual and compensatory damages according to proof at trial;

3. For attorneys' fees and costs;

4. For such other and further relief as the Court deems just and proper

COUNTERCLAIM

Date: April 23, 2020

RESPECTFULLY SUBMITTED,
DICKER & DICKER, LLP


By:/s/Hagar Cohen
David H. Dicker, Esq.
Hagar Cohen, Esq.


Attorney for Defendants
GVD GUFFEY RIM FOREST,
RANGI GVD-GUFFEY, and GVD-
GUFFEY PARTNERS II

COUNTERCLAIM